1 **WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JEN MANN, a California resident; JOHN LEACH, a Virginia resident; DAVID FERGUSON, a Canada resident, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LIBERTY LEAGUE INTERNATIONAL, LLC., an Arizona Corporation; BEYOND FREEDOM PUBLISHING, LLC, an Arizona Corporation; BRENT PAYNE, an individual; SHANE KRIDER, an individual; LIBERTY LEAGUE HOLDINGS, LLC, an Arizona Corporation, formerly known as BIG ASS BRITCHES HOLDINGS, LLC, an Arizona Corporation; Does 1-00, inclusive,<br><br>Defendants. | No. CV-09-1260-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Defendants' Motion to (1) Transfer the Case to the District Court for the Central District of California or Alternatively (2) Compel Arbitration (Dkt. # 22) and Defendants' Motion to (1) Dismiss the Case for Failure to State a Claim or (2) Require a More Definite Statement (Dkt. # 25). For the following reasons, the Court grants the Motion to Transfer and denies the remaining motions as moot.

**BACKGROUND**

Two lawsuits with similar parties are pending, one in this Court and one in the United States District Court for the Central District of California (the "California court"). Both lawsuits center around allegations that Defendants created a marketing scheme by selling faulty financial development products and programs, causing loss to those who purchased and joined the program.

## I.  The California *Huff* Litigation

On July 25, 2008, plaintiffs Vicki Huff, Sarah McDowell, and Lynn Milsom, on behalf of themselves and members of a class (collectively, the "*Huff* Plaintiffs"), filed a lawsuit in the California court. The class originally included "all Liberty League Advisors and Associates in the United States and Canada who, during the applicable limitations period, purchased" certain products. In the original California complaint, the *Huff* Plaintiffs sued seven named defendants: Liberty League International, LLC ("LLI"), Beyond Freedom Publishing, LLC ("Beyond Freedom"), Brent Payne and his wife, Julie Payne, Shane Krider and his wife, Michelle Krider, and Liberty League Holdings, LLC ("LLH"). The complaint alleged the following claims: civil RICO violations through transporting and receiving stolen money and through mail and wire fraud; violations of California consumer protection statutes; violations of California and federal anti-pyramid statutes; and unjust enrichment. Defendants then filed a five-part motion, which included a motion to transfer the case to the United States District Court for the District of Arizona.

Before the California court could rule on the motion, the *Huff* Plaintiffs filed their first amended complaint, which sued all the same Defendants as in the original complaint, except for two individual defendants' spouses. The amended complaint also recast the existing claims under California's unfair competition statute and limited the class to only those "Advisors and Associates who joined the Liberty League Program while residing in California" during the applicable dates. After Defendants filed a new set of motions, Judge Virginia A. Phillips granted three motions in part: (1) a motion to dismiss for lack of personal jurisdiction as to Beyond Freedom, LLH, Mr. Payne, and Mr. Krider, (2) a motion to compel

arbitration, and (3) a motion to dismiss the unfair competition allegations for failure to state a claim because the *Huff* Plaintiffs had pled their claims under California law, but the California court had concluded that Arizona law applied.

On June 11, 2009, the *Huff* Plaintiffs filed their second amended complaint against LLI, Mr. Payne, and Mr. Krider, alleging the same California-based class as in the first amended complaint. This complaint added allegations against the individual defendants to establish personal jurisdiction, restated the unfair competition claims under the Arizona Consumer Fraud Act, and alleged an unjust enrichment claim. Defendants then filed another motion to dismiss for lack of personal jurisdiction and for failure to state a claim, which Judge Phillips subsequently denied. Since that time, the *Huff* Plaintiffs have proceeded to arbitration in California.

## II.    The Arizona *Mann* Litigation

On June 11, 2009, the same counsel that represents the *Huff* Plaintiffs brought a lawsuit on behalf of a new group of named plaintiffs. Plaintiffs Jen Mann, John Leach, David Ferguson,[1] and the unnamed class members in the instant case (collectively, the "*Mann* Plaintiffs") filed a complaint in this Court against the same defendants that were named in the *Huff* litigation's first amended complaint: LLI, Beyond Freedom, Mr. Payne, Mr. Krider, and LLH.[2] The Complaint alleges civil RICO violations through transporting and receiving stolen money and through mail and wire fraud; violations of Arizona consumer protection statutes; violations of Arizona and federal anti-pyramid statutes; and unjust enrichment. Moreover, unlike the two amended complaints in the *Huff* litigation, the Arizona class is broad as the initial complaint in the *Huff* litigation, including "all Liberty League

---

[1] Jen Mann is currently a California resident, but she was an Arizona resident at the time she allegedly entered into agreements with Defendants. Neither Mr. Leach nor Mr. Ferguson, however, are citizens of either Arizona or California.

[2] These are also nearly the same parties as were named in the initial complaint, with the exception of the individual Defendants' spouses. As mentioned earlier, however, the second amended complaint in the *Huff* case sued only LLI, Mr. Payne, and Mr. Krider.

Advisors and Associates in the United States and Canada who during the applicable limitations period purchased" certain products.

**DISCUSSION**

**I.     Legal Standard for Motion to Transfer Venue**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In other words, "section 1404(a) requires two findings—that the district court is one where the action might have been brought and that the convenience of parties and witnesses in the interest of justice favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985), *cert. denied*, 474 U.S. 1021 (1985). The party moving for transfer has the burden of showing that transfer is appropriate. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000), *cert. denied*, 531 U.S. 928 (2000).

**II.    The *Mann* Plaintiffs' Claims Might Have Been Brought in California Court.**

The threshold inquiry is whether the action "might have been brought" in the proposed transferee district. *See* 28 U.S.C. § 1404(a). The *Mann* Plaintiffs do not contest that they might have filed this action in the California court, especially given that the *Huff* Plaintiffs, who were represented by the same counsel, brought a similar lawsuit in the California court. To the extent the California court lacks personal jurisdiction over some of the Defendants, the *Mann* Plaintiffs do not raise this argument to the Court. Even so, Defendants admit in their Motion that they would consent to personal jurisdiction in the California court if the case were transferred.

**III.   The Interests of Justice Warrant Transfer.**

In determining whether transfer would be in the "interest of justice," 28 U.S.C. § 1404(a), the Court may consider a variety of factors, but it has "discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones*, 211 F.3d at 498. The factors the Court may consider include, *inter alia*, the parties' convenience, witnesses' convenience and availability, availability of compulsory process to compel unwilling witnesses' attendance, relative

1 financial burdens, access to sources of proof, differences in litigation costs, contacts with the chosen forum, the forums' jurisdiction over the parties, the forums' relative familiarity with the governing law, public policy, the existence of any forum selection clauses, and the courts' relative docket congestion. *Jones*, 211 F.3d at 498–99; *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp.2d 1183, 1196 (S.D. Cal. 2007). While the Court weighs these factors, transfer of venue "is not appropriate . . . when the transfer merely shifts the inconvenience from one party to another." *Impra Inc. v. Quinton Instruments Co.*, 17 U.S.P.Q.2d 1890, 1891 (D. Ariz. 1990).

Furthermore, "[a]s a general rule, cases should be transferred to districts where related actions are pending." *Impra*, 17 U.S.P.Q.2d at 1892. "The feasibility of consolidation is a significant factor in a transfer decision . . . although even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A. J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974); *compare Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982) ("There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.").

Applying factors relevant to this case, transfer is appropriate. Most importantly, the *Mann* litigation is substantially similar to the *Huff* litigation, which is ongoing in the California court and for which arbitration has already begun. Both cases are class-action lawsuits in which the class is a group of individuals who allegedly purchased Liberty League products. The *Mann* litigation class includes "all Liberty League Advisors and Associates in the United States and Canada who during the applicable limitations period purchased" certain products. This is exactly the same class as was pled in the original *Huff* litigation, illustrating substantial similarity between the legal issues and parties. Even though the *Huff* class now includes only individuals "who joined the Liberty League program while residing

in California," the nationwide *Mann* class necessarily includes the California subset class. Likewise, the Defendants in this case are the same defendants in the original *Huff* complaint, except for Mr. Krider's and Mr. Payne's spouses. Although the current *Huff* case includes only LLI, Mr. Krider, and Mr. Payne as defendants, there is still substantial overlap of defendants, and it appears that the *Huff* Plaintiffs limited the number of plaintiffs and defendants only in response to various motions in the California court.

The two cases also share similar legal issues. Both the original *Huff* complaint and the *Mann* complaint allege civil RICO violations through transporting and receiving stolen money through mail and wire fraud, violations of state consumer protection statutes, violations of state and federal anti-pyramid statutes, and unjust enrichment. The current *Huff* complaint now alleges only violation of the Arizona Consumer Fraud Act (a consumer protection statute) and unjust enrichment, but there is still substantial overlap in the legal issues and factual disputes underlying these claims. Both cases center on alleged misrepresentations by various defendants regarding internet-based product sales, and the parties likely would dispute facts relating to Defendants' business, management, advertising, products, and the website's effect on purchasers.

Furthermore, because the legal and factual issues are similar, it would be more convenient and efficient for the California court to consider all these issues together. Indeed, a "significant factor," *A. J. Indus.*, 503 F.2d at 389, is the fact that these cases might be consolidated under Federal Rule of Civil Procedure 42(a) because the "actions before the court involve a common question of law or fact." This is especially important where, as here, two courts might resolve the same substantive claims in contrary ways, such as if this Court and the California court resolved claims based on the Arizona Consumer Protection Act differently. Not only would transferring the case avoid inconsistent or duplicative results, but also it would avoid duplicative discovery about the various defendants, their business, their website, their products, and the effect on purchasers. If the cases were before the same court, that court could streamline discovery and resolve discovery disputes in a way most convenient and cost-effective to the parties, the witnesses, and the court.

1 | Plaintiff raises several reasons why venue is proper in Arizona, but none of these reasons is sufficient to overcome the factors favoring transfer. First, "[a]lthough great weight is generally accorded plaintiff's choice of forum," the *Mann* Plaintiffs' choice of Arizona "is given less weight" because the named plaintiffs have brought a class action, rather than an individual lawsuit. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). While the named *Mann* Plaintiffs have limited connections to California—the only strong connection being Ms. Mann's current residence in California—neither the named nor unnamed *Mann* Plaintiffs have particularly strong connections to Arizona either. Ms. Mann lived in Arizona when she purchased the Liberty League programs, but her current California residence suggests California is a more convenient forum for her.[3] Meanwhile, the other named Plaintiffs live significant distances from both Arizona and California: Mr. Leach is from Virginia, and Mr. Ferguson from Canada. As for the unnamed Plaintiffs, the only connection to Arizona seems to be the fact that Defendants made internet representations from Arizona; given the internet's worldwide availability, however, this factor alone is not strong enough to justify keeping the case in Arizona.[4]

Plaintiffs also note that both the corporate and individual defendants, and thus much of the evidence, is from Arizona. While this would normally favor an Arizona forum, the situation differs where a similar case is already pending in another district. Discovery, witness travel, and party travel are inevitable; the Court sees no reason to force the parties and witnesses to undergo the same fact-finding in two tribunals, even if much of the evidence is in Arizona. Plaintiffs also incorrectly assert that Federal Rule of Civil Procedure 45 would preclude the California court from securing witnesses' presence because Rule 45(2)(D)

---

[3] Plaintiffs emphasize that Ms. Mann lives in the Southern District, rather than the Central District of California. Her California residence, however, still favors a California over Arizona courts.

[4] Some of the unnamed plaintiffs would be from Arizona, but there are likely unnamed plaintiffs from many other states as well. Therefore, this is not a strong factor favoring venue in Arizona.

- 7 -

allows service of a subpoena "at any place . . . that the court authorizes on motion and for good cause, if a federal statute so provides."

Aside from the parties and evidence, Plaintiffs contend this Court is more familiar with Arizona law than is the California court. Judge Phillips, however, has already managed the *Huff* litigation and ruled on multiple motions in that case, including an order deciding how and why Arizona law applies. Therefore, the Court does not consider familiarity with legal issues a persuasive factor in this case.

Plaintiffs also assert that the venue selection clause, which is set forth in LLI's terms and conditions, specifies that "venue and jurisdiction shall be in the State of Arizona, Maricopa County or applicable Federal Courts." However, Plaintiff argues in the same Response that "the venue selection provision . . . is substantively unconscionable." Moreover, Judge Phillips, by retaining jurisdiction, impliedly assumed venue in California was appropriate in spite of the venue-selection clause.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Transfer (Dkt. # 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Alternative Motion to Compel Arbitration (Dkt. # 22), Motion to Dismiss (Dkt. # 25) and alternative Motion to Require More Definite Statement (Dkt. # 25) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to transfer this matter to the United States District Court for the Central District of California.

DATED this 5th day of January, 2010.

_____
G. Murray Snow
United States District Judge